Your Honors, may it please the Court, Max Kirchhoff on behalf of Appellant Victoria Smith. Sorry about that. No problem here. We are here today on the District Court's Rule 12b1, dismissal of this action for lack of ripeness under Article 3. We got here by way of a pretty complicated fact pattern. I'm not sure how much you spent time on it. I don't blame you if you didn't. It's the insurance law doldrums that we're in here. And under Montana law, all hurt persons, when they recover money from a third party, they're entitled to be made whole for all of their damages, for their attorney fees and costs, before any other insurer, health insurer in this case, which may have provided medical expenses for the same element of damages that the hurt person recovered from a third party. They're entitled to be made whole for all of their damages, fees and costs, before that health insurer can even assert a right of subrogation. So we did prepare. We did read your briefs. So can I jump right to what's bothering me here? Yes. I don't actually think this is about ripeness, so I kind of agree with you that there's been a problem. But I'm really struggling to understand how your complaint states a claim on the merits, because I don't see any Montana case that explains what an insurer can do to ask for information or try to get money from someone. So all the cases I could find about subrogation were the insurer had the money or a third party sent the insurer money. I didn't see anything about communications between the insurer or someone acting on the behalf of the insurer and the insured, like we have here, that tells us whether this counted as enforcement of subrogation or a lien. Like the letter doesn't say anything about a lien. I mean, the communication doesn't have the word lien. So what Montana case tells us that the communication that was sent to your client is enforcement of a lien? Sure, and I don't want to play with semantics here, but it's the assertion of a right of subrogation. It's not the assertion of a lien. Okay, so what Montana case tells us that a letter like this counts as the, whatever you just said, enforcement of subrogation? So the magistrate judge on the 12B6 briefing below did indicate that, hey, in Swanson v. Hartford, the Montana Supreme Court clearly indicated that a subrogation claim letter informally sent to the injured person can give rise to the improper assertion of a lien in violation of their made whole rights under Montana law. I'll also explain to the court that I am class counsel against Pacific Source Health Insurance, an Oregon corporation. We represent over 87,000 Montanans who were subject to a litany of different improper assertions of a subrogation lien that included sending letters to medical providers that said, hey, we don't pay for any injuries related to an auto collision. They also sent pamphlets to their insured saying, hey, if you get hurt in an auto or in a premises policy, you've got to go through their insurance. Don't go through us. They're the ones that caused it. And this was deemed the improper assertion of a lien in violation of the insured's made whole rights because, no, the health insurer does have to pay for that because those third-party policies pay for a whole host of different type of damages than just your health insurance pays. They pay for your lost wages, for your pain and suffering. I think your theory here, though, is that this communication was somehow communicating to the client that the settlement money she had received needed to be sent back to the insurer. And I don't understand, first of all, what case says that we should read this letter that way or even how on its face it is doing that. Well, I think, and I'm eating crow a little bit because opposing cited the Kramer v. John Alden Life Insurance Company case in their briefing. And that's an ERISA case, and it's subject to a federal ERISA law, which does not have anything to do with Montana State law. However, that case supports plaintiff's position, sorry, appellant's position here because in the end of the case on page 1213, the Kramer court said, hey, look, these parties were going back and forth, and the insurer was sending letters saying, hey, you might owe us $1,900 for this. And they were haggling about what amount needed to be paid back to the ERISA insurer. And the magistrate judge, whose findings and recommendations were adopted in full, the magistrate judge said, hey, consistent with the allegations of the plaintiff's amended complaint, the defendants in this case may very well have asserted a right of subrogation, but because they did not initiate judicial proceedings, they did not enforce the right of subrogation, which is what gives rise to a cause of action under ERISA, not Montana State law. So if Kramer is a federal district court case that doesn't bind us, I don't know if I agree with you that it isn't relevant to this topic of what kind of letter would count because it's about ERISA, but anyway, we're not bound by it. It could be wrong. Like, let's just say it's wrong. Then what? We're supposed to be applying Montana law, not what a federal district court said. So what Montana law tells us that this is any kind of effort to get the insured person who got the settlement money to feel like she is being forced to send money back. I just don't see how you get to that interpretation. Well, I think the plain language of the letter itself, you know, 28 percent of Americans have been sent to collections for a debt, and when folks get a letter that says, hey, make a check out to this address and include your claim ID because we're making a claim against you, and the letter also says, hey, please let us know if there's additional medical expenses that were related to your hip replacement injury or if some of these were unrelated to your hip replacement injury, but there's no dispute that the plain language on that letter says, hey, make a check payable to Healthcare Services Corporation's subrogation vendor. They exist for the purpose of subrogating amounts that healthcare services have paid, and they say, hey, make us a check for $42,000. And I don't know how else you can... Wait, where does it say that? Where does it say you have to write us a check for $42,000? It says, please make your check payable to... In this, like, boilerplate footer. I mean, I think it's not a great letter, and I'll ask your opposing counsel about that or a great statement, but there's, like, a footer on the stationary that doesn't seem to be incorporated into the text, and the whole thing was only sent because your client sent this, you know, I'm going to sue you in a week if you don't say something to us. So then they sent her some statement of amounts, but, like, there's nothing that makes it seem like they were going to send this otherwise or they were planning to collect. I mean, she asked them to send her something, so I don't really understand this. So the top bar of the letter indicates where to pay the check with a claim ID. That claim ID can't be boilerplate. I assume every person they make a claim against, every insured they make a claim against, gets their own specific claim ID, and that's what the insured is instructed to write on the face of their check. To the extent that any other language is boilerplate, that serves to underscore how critical it is that we do discovery into how this letter is used, because if it is a boilerplate communication, it's being sent to hundreds, if not thousands, of Montana insureds, as Blue Cross is the largest health insurer in Montana, and if they don't understand their made whole rights, they may be sending checks in response to this letter. So, excuse me, I get to ask questions. I'm sorry. Do you think that this, what evidence, I mean, I know this is a motion to dismiss, but why should we assume that this mailing would be sent to anyone else? I have no reason from what the complaint says to think that this mailing would have been sent to your client if she hadn't asked for it. Yeah, so that's a very routine end of personal injury case communication that's sent in Montana. We do have a wonky made whole rule in Montana, and as you close your client's cases, it is part of the lawyer's professional obligation to their client to send a letter to anyone who may potentially have a lien, and typically, you say, as my paralegal just informed me two days ago, I sent a letter on behalf of one of my clients to a different health insurer in Montana, and I said, hey, he's been subject to attorney's fees and costs. He's not going to be made whole. Can you please just confirm that because you purchased this policy on the exchange and it's subject to Montana law that you're not going to assert your right of subrogation? Maybe this is your practice. It's the exact same letter. Excuse me. I'm going to ask another question. This is your practice maybe. Is there something in Montana that you can point me to that says you have to send a letter like this? Because it seems like this letter was a pretty bad idea. It didn't include the information that would be needed to calculate whether she was actually made whole. It didn't say how much the settlement was. It didn't say how much the attorney's fees were. It seems like this letter was setting up getting a very bad response. So it doesn't seem like a great letter. Yes, and if Health Care Services Corporation were to have sent a letter in response to my letter that said, hey, tell us what the total damages were, tell us what your client's total recovery was, and tell us what your attorney fees and costs are, I would have gladly provided them with that information. But this letter that was sent by my firm came on the heels of two prior letters requesting the same over a year before that letter. So she was diligently waiting for a response from Health Care Services about whether or not they could potentially certainly You haven't provided those letters, though, as far as I can tell. I couldn't find them, right? So the one letter that the district court used, didn't necessarily incorporate, but used in reaching their findings did reference that the prior letter that was a year old had been sent. But that's because the complaint said that, but it didn't attach it. We don't know what that letter said. Well, we didn't attach any documents to our complaint. Judge Gilbert's trying to get in. Let me just follow up on that. So you agree that this issue should have been or will be resolved as a matter of whether it states a claim, correct? Not ripeness. Because in the complaint itself, she alleges that Blue Cross provided plaintiff with a chart of the medical expenses, right, and then which claiming that subrogation leaned against the plaintiff. Blue Cross threatened the amount of its claim. So if we begin at the beginning, we look at what's alleged in the complaint and that the next paragraph, the amount of the medical expenses for which Blue Cross currently claims subrogation is $42,000. And then she does allege in the complaint, she alleges damages. So isn't that an issue of not ripeness, but whether or not there's a failure to state a claim, which was precisely what the magistrate judge did and said there wasn't enough to state a claim. The district court, however, said there was a ripeness issue. I don't see that, and I'm asking you whether or not it's a matter of the state of claim. And then the second issue is that the law that really pertains here is Montana law. And the Montana law, at least that I'm familiar with, is very strict. And anything that constitutes a, or anything substantial that constitutes an effort at enforcement is enough to, for a cause of action to prevail or to at least go forward. Do you agree with me? Yes, Your Honor, I do. And I'll answer the remainder of your question, then reserve for rebuttal. I don't agree that the case would have properly been dismissed under Rule 12b-6 motion, though. Yeah, I am saying, but that's the issue. Is it under 12b-6? It's not a question of ripeness. So that's a procedural issue. But if we get beyond that, we look at what's alleged in the complaint, and we look at, you know, and that's beyond what I think I read in the complaint. There is a stating, she stated cause of action, and that she stated damages. So we deal with it, whether or not there was, it stated a claim for relief. And as you know, that Blue Cross claims that the only way that an effort by an insurance company that would constitute enforcement has to be in court. But I don't read the Montana classes. In other words, that Blue Cross would have had to initiate a cause of action. You understand that to be their position? I understand that is the argument that they have made, that judicial proceedings are necessary. Okay, so then how do you read, then, the Montana law, as opposed to the ERISA case in federal court, as to what constitutes The Montana Supreme Court has been very What constitute, yeah, Montana law, which applies here under diversity, what does the Montana cases hold as to what constitutes an enforcement by an insurance company? Well, the Montana Supreme Less than what the insurance company is alleging, which is there has to be judicial enforcement. Yeah, the Montana Supreme Court has interpreted that term enforcement to include the mere assertion of a subrogation lien in violation of the insurance made whole rights. And there is not a bright line test. What facts here establish that? Asking the client to send a check, asking the client to identify whether there are more charges related to the medical expenses they paid or whether they missed some. What that is doing is saying, hey, look, we have a lien. Maybe this lien is going to be bigger than the number we're giving you. Maybe it's less, but you're going to write us a check. And we all know that if she were to have sent a check for $42,000 in response to that communication, Blue Cross would say, we do not have a lien in this matter anymore. Was the fact that they set forth precisely what they assumed were the charges, was that also a support your claim that they were engaging in enforcement? They attached the letter setting forth every one of the charges, right? Yes, and health insurers are quite scrupulous and accurate in determining which charges had been paid for related to a third party's conduct. Okay, so my last question is, if, in fact, this is a matter to be reviewed on appeal and not as ripeness, but whether or not it states the claim, can it be resolved then by this court to send it back and make that or can the court make the decision as to whether or not it states the claim? Or does it have to be reversed for the district court judge who decided it on ripeness? Do we have to reverse it to allow the district court to decide whether it states a claim? Or can this court look at the Montana law to see whether, based upon what's alleged in the complaint, it states a claim? I think that there's a factual dispute between the parties, so it would be improper for this case to be dismissed under Rule 12. What are the factual disputes? What the letter means. The intent of the letter is disputed by the parties. The Montana Supreme Court has held that reasonable inferences may be drawn from letters and other communications. The classic example is, let's say you have a boss who has a history of sexual assault of his employees and sends an email to a secretary on a work trip that says, come to my hotel room. And that makes her feel as though she's being sexually assaulted, and she files a case because she feels unsafe. And the boss says, nope, I just wanted her to come to my room to look at my refrigerator. It was broken. And she says, no. Well, wouldn't we want to do discovery to find out what he meant, to find out if he had said that to other folks? That's how you get to the intent of a writing. This is not a contract. This is not a will or a trust that's subject to strict judicial scrutiny about the contents. This is an informal communication. Yeah, but isn't it – discovery's closed, right? There's been no discovery done in this matter. Okay. All right. None whatsoever. So you don't know – and is it an objective or subjective standard? For? For whether or not, let's say, your client subjectively thought that this was an effort to seek subordination. I don't believe that there is any Montana Supreme Court opinion that reaches that level of clarity on the matter. But it sounded like you were going that way with your hypothesis. Right. You're saying we need discovery. I don't really understand why this isn't a legal question, that we look at this and say, what would a reasonable person think this meant? Would they think it was a demand for a payment or not? Why wouldn't we just decide that as a court rather than – I'm not sure what the discovery would tell us that would help us look at this document and figure out whether it's asking for a payment or not. Well, if this is a boilerplate letter and it's been sent to hundreds of individuals, have there been checks sent in response to it, and were those individuals made whole? I mean, that's really critical to get to the merits of the case here. That's all we want is discovery into the merits. And we may very well do discovery and they say, hey, this letter was only ever sent to you. This was never sent to anybody else. And you know what? Sometimes that happens. But when we're trying to get to the truth of the matter asserted, we need that discovery. And when we're trying to protect Americans, where almost 30 percent of which have been faced with collections and unlawful debt collection practices, I do believe that this is a meritorious case and deserves discovery into the merits so that folks aren't paying checks to health insurance companies that they're not supposed to be sending them. All right. I'm going to cut you off here, but I'm going to give you two minutes for rebuttal. Thank you. All right. Thank you, Your Honor. May it please the Court, Ray Cardozo for La Crosse Blue Shield of Montana. If I could start with Justice Friedland's questions and then move to your questions, Judge Silver. There's absolutely no Montana case that holds that anything close to what we have here constitutes enforcement of the right of suffragation. I do want to correct Judge Silver. We're not contending that there has to be formal legal action. It's theoretically possible that there would be a letter that would have something that would constitute enforcement, but what we have in this case clearly cannot qualify because the case law is very clear, the law of Montana, that the insured and insurer are entitled to communicate about the status of the claim. In fact, they have to do that to conduct the made whole analysis. So when you see right there in the first page of the letter, notify us if there is a settlement and inform us of the status of the claim. This can't possibly be enforcement. They don't even know, even though they actually had been told, I think, in one of the letters, they don't even know that it's settled until once they say tell us the status of the claim, it's clearly in that category of preliminary communications that you not only are entitled to do, but you must do to conduct the made whole analysis. What's the best case you have? Because as I have looked at the cases, and I'm actually relieved to learn that it isn't your position and hasn't been your position, that there must be, that the insured has to initiate formal litigation proceedings. But what then, what case supports your position? Unfortunately, although, as Justice Friedland points out, it's not binding on this court, the Kramer case is the closest to the point, and I would just say that. But that's an ERISA case. I think you agree with me that the Montana case law applies because it's a diversity act. Yeah, absolutely. But what Kramer, the end of Kramer, they have an analysis of this concept of enforcement and what it means, and there's a discussion of that. And they make this very point that the magistrate also made in this case, that if we were to accept Kramer's expansive reading of the word enforcement, then defendants could not request information from a planned participant or her counsel in an effort to determine whether the participant had been made whole, because doing so would constitute the enforcement of their subrogation right. So Kramer echoes the reasoning of the magistrate judge in this case. So we don't have an appellate case, but we've got four different jurists, the magistrate and the district court in Kramer, who said in Kramer in adopting this recommendation, I find this point persuasive. And then we have the district court, the magistrate in this case, and then the district court explicitly, while it had some differences in whether it's right in 12B6, explicitly adopted the conclusion that this was not assertion of the right of subrogation, that finding. And again, it can't possibly be— Can I just ask, I was looking at the letter at ER44 that was sent from the insured to the insurer to try to figure out that prompted the response, and I don't read it as actually even saying that the case had finally settled. I think you mentioned that you think there was a communication that said the settlement was finalized, but I don't think we have a document that says that. Yeah. Actually, I might be confusing that from the fact that was put in the complaint later. So, but the interesting — but the other point, as you pointed out, Judge Freeland, this was a response. There was no effort to do anything until they were asked this question. And the interesting thing about this response, the letter that was sent asked explicitly a couple of things. One was to give some factual detail about dates and times and expenses. So when they respond with that information, that's not asserting the right of subrogation. That's providing the information that was requested. But then the letter also asked for two other things. Are you asserting a lien? And if so, explain how it doesn't violate the made-whole doctrine. When they don't say either, I'm asserting a lien, and this is how it complies with the made-whole doctrine, and when they instead say, tell me more, you can't reasonably construe this as asserting a right of subrogation or enforcing a right of subrogation. So in the Ferguson case that I'm familiar with, the Court said that an insurer could not, was precluded from requesting and receiving information. So we do have, in that case at least, the request by the insurance company for information. In addition, there was a whole list attached of what the insurance company had paid and how could that not be interpreted, at least subjectively, but objectively to be enforcement. So even though there were some questions made before, it was the response by the insurance company that would constitute whether or not there was a request for subrogation. When you're specifically asked for the date and time of the services, and that's what you provide, but then you also say, notifies if there's a settlement, give us an update on the status of the claim, you have to read those two things together, and it's not asserting anything. And when you're specifically asked, are you asserting a lien, and tell me how it's made whole, and you don't respond to that. Are you saying, but are you familiar with the Ferguson case? Yes. The other case, and also, let's say, Diaz v. Blue Cross? I'm not familiar with Diaz. But you agree with me that it's the Montana law. Yes, absolutely. Even though, certainly, the Kramer case, which was an ERISA case, may be advisory, but you have to look to Montana law for determination. And as I mentioned before, and I will repeat, it is not your position that an insurance company must engage in litigation in order for it to be enforced. Yeah, absolutely not. Okay, but it has to be something else, and give me your best case under Montana law that would establish that this was not a request for subrogation. Well, all I can say is that because the only cases that have ever found a made whole violation have involved formal legal action, and the possibility that a letter might has never been recognized, then I think you have to fall back on the language of the statute and say it has to have something affirmative because that's what the word enforced means. And then I would call on the reasoning of the magistrate judge and district court judge in this case and Kramer's reasoning, which was talking about what this word enforcement means under Montana law. So are you saying the facts in this case present an issue of first impression because the insurance company did not seek enforcement by litigation? Because what happened here, what the insurance company actually did by sending the correspondence, that that's an issue of first impression under Montana law? Yes and no. The way I would put it is no one has ever before tried to stretch this concept as far as it's been asserted. That's why there's no case. Stretch it from a situation where the insurance company initiated a cause of action. Or as Judge Friedland pointed out, the insured company did something, received the money, et cetera. That's what happened in Ferguson. In Ferguson, the insurer got money from a third party, and it's about that. It's not a communication with the insurer. The two other things that are missing here, and the magistrate judge pointed this out, in Ferguson, the insurer inserted themselves in the third party proceedings and then got the money. So that, now you're in it. That didn't happen here. The magistrate judge pointed out the insurance company never even notified the third party tortfeasor of these expenses. That's how a notice can create problems. Swanson was a choice of law case, so they never discussed or analyzed what the magistrate pointed out. What qualifies is made whole, what doesn't. But in that case, the tortfeasor wrote the check to the plaintiff and the insurance company, and the insurance company wouldn't sign it over until after a debt relief action is filed. So in all of these situations, you have something the law and the policy provides that notices go both ways. They're supposed to be communicating. So a notice of the medical expenses you incurred, that's what you're supposed to do. You're supposed to let them know that. But all of the cases have the insurer, if not taking formal legal action, somehow immersing itself in the underlying litigation. So why did this response have, you know, make your check payable? I mean, I'm inclined to think it doesn't really say clearly we're enforcing a lien, you have to pay, and so I think it's probably not enough, but it certainly caused a lot of confusion and could have been better. Why is it written like this? It's a preprinted form that they used that's attached to the letter. So, yeah, obviously we would have preferred that when you're sending a letter like this, you don't just use the form you use for all other circumstances, but I can't improve on the magistrate judge's words. The headings are boilerplate and did not direct Smith to make any payments to Google Cross or otherwise seek to collect subrogation. I think that's correct, particularly when you have the critical fact that it says, tell us if it settles and give us a status on the update of the claim. You're not asserting anything. You don't even know what's happened. Do you agree that this can be decided on the records in front of us, that additional discovery is not necessary? Absolutely. In fact, the interesting thing about this case, the factual universe is this one letter. That is never going to change. And as we've pointed out on pages 33 of our brief, we've cited all of the cases that when you've got an undisputed writing and the question is whether what's in there meets a statutory standard, that is a question to law. It's a question to law 12B6. If you somehow push it past the pleadings, it's a question to law summary judgment. If you push it past the pleadings, it would be a question to law trial. Where we are, how this was decided, you have the entire relevant universe to that issue. Let me ask you about that, counsel, because I could imagine a situation where in 10 other cases, and this is all hypothetical, I'm just super clear, I'm just making this up, but that the company may have taken a different position and said, no, this language actually is an enforceable request. Like in a statute of limitations case where they had to establish, they actually had to make a claim. How can we be certain that this letter hasn't been advocated in a different way by the insurance company unless there is some discovery about this boilerplate, for example, as you described it? I don't think that's even legally relevant because before the plaintiff, we've also cited the case law that if the plaintiff can't show a violation of the plaintiff's rights, what happened to anyone else is irrelevant. And that was actually part of the Kramer case, too, because they made it a putative class action and they tried to make this argument about other people. So is it a reasonable test as to what objectively reasonable a person would have assumed the documentation that was provided from the insurance company, whether or not it's reasonable to assume that that was a request for subrogation? I'm not sure I'd put it that way. I would just put it in terms of the language of the statute because what's alleged is that this letter violated that Montana statute. Exactly, but the Montana statute is in favor, favors, I should say, the insured because it's very specific that the insurance company cannot do this. So we have to look at the facts to see whether a reasonable person would have thought that the activities by the insurance company constituted a request for subrogation. I'm having some difficulty connecting that standard that was just articulated to what the Montana statute says is prescribed, which is enforcement. Exactly, but it precludes enforcement, correct? Right. So we take the facts to determine whether or not a reasonable insured would have assumed that this was enforcement. Well, I mean, you have to look at, I suppose you, the question is what the insurance company meant by what it did. But we have undisputed facts here, and so that's why I think you're saying that this can be decided as a matter of law, right? Yes, and I would say two things. If one applies the standard you just articulated, no reasonable person could interpret it because it's asking for information that you need before you can assert the lien. And there's no case right on point. That's just something we'd have to decide. So it is kind of an initial impression. I mean, Ferguson and the other cases don't deal with this directly. Yeah, but also you have to take into account that what the made-whole analysis requires of an insurer, this proposition is just unreasonable because you can't do what the statute you would impair the statute if you had this construction, which is what both the Court and Cramer and the magistrate judge pointed out. This would be an unreasonable interpretation of enforcement because it would undermine the very thing the statute is trying to do. But my second point is because Montana law expressly permits and requires notices going both ways and then says, but you can't enforce, I think when you read those two together, I'm not sure what the insurer meant, how the plaintiff understood it. I'm not sure any of those things are relevant as opposed to a quantum of conduct that rises to the level of enforcement. But I think your standard also, whichever way you interpret it, this case is a clear-cut case. All right. Thank you, counsel. I'll have two minutes for rebuttal. Can I ask you a question that I forgot to ask in your opening just right from the start? If you had leave to amend, could you add anything that says, and Blue Cross called her and said you must pay now, or and they sent another letter saying you must pay now? Are there any other facts that you could amend this complaint with? We could amend the complaint to include prior communications that were made on behalf of Victoria Smith to health care services, explaining that the case had settled, explaining that she was trying to fulfill her contractual obligation to notify them of a settlement. There were three prior letters that were sent before the letter that gave rise to the response was sent, and that's the only letter that's ever been looked at on the lower court's record. And they'll provide a much broader factual picture about, okay, well, what were the parties actually talking about here, instead of just looking at the narrow end window of the communications. Had the case actually settled when the earlier ones were sent? I thought they were like, it's in progress, a settlement discussion. Yes, so just to comply with that contractual obligation, we sent a letter a month before mediation was set because, as you know, many cases settle at mediation, and then we sent a follow-up after mediation, and then we sent another follow-up, and then this letter. So I think there might have been in total four letters, which can really help show. This is about your insured receiving money from a third-party tortfeasor wanting to make clear that, look, there's not going to be a lien here because she's been subject to attorney fees and costs. And if Blue Cross really wanted to probe into that matter, they're totally entitled to send a letter saying what were her total damages, how much did she recover, what were her fees and costs, and I can flatly tell you I would have gladly responded to that letter with all of that information. Their letter didn't request any one of those elements. And have you preserved the request for leave to amend? I believe we have, Your Honor. So I'm – Pardon me. Actually, because it was a 12B1 dismissal, it was done without prejudice. Okay. I'm looking at the complaint, and I'm trying to remember precisely what you said as to what you would add. But in the complaint, it says that February 15th, Blue Cross provided plaintiff with a chart of medical expenses for which it is claiming subrogation lien against plaintiff. Blue Cross also threatened that the amount of its claim may increase. The amount of medical expenses for which Blue Cross currently claims subrogation lien is the $42,000 in sum. Are you saying you would expand those allegations? We would definitely be able to include more detailed allegations as to why this letter was reasonably – So what would those be? Well, you know, we're just looking at notice pleading here. So we didn't include in the complaint the facts that give rise to an improper assertion. Is the instruction on the letter to please make your check payable, too, and to include the claim number? Because make no mistake, it's health care services that made a claim against their insured. She didn't make a claim for their medical expense summary. They said, here's the amount of our claim. What is that claim other than the lien? I don't know. Perhaps discovery would further elucidate that. But when I see, here is the total amount of our claim. The amount of our claim may increase if there are additional medical expenses discovered related to this incident. And then the subsequent page says, please make your check payable to this number with your specific claim identification number on it. That, to me, is an insurance company. We've made a claim against you for amounts we've previously paid on your behalf. Please send us a check for it back because you got money from a third-party tortfeasor for the same element of damages. And that was done without conducting a made-whole analysis in contravention of longstanding Montana law. All right. Thank you, counsel. Thank you both for your briefing and argument. Thank you, Your Honors. This matter is submitted, and this particular panel is done. But two of us will be back tomorrow. All rise.
judges: OWENS, FRIEDLAND, Silver